UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMIN JUMAH,                         )
                                   )
            Plaintiff,             )
                                   )
V.                                 )        Case No. 07 C 6507
                                   )        Honorable Judge:
                                   )        John Darrah
                                   )
UNITED STATES OF AMERICA           )
DRUG ENFORCEMENT ADMINISTRATION,   )
                                   )
            Defendant.             )
                                   )

**FILED**

JUN 1 1 2008
JUN 11 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

<u>MOTION IN RESPOND TO THE COURT ORDER TO SHOW CAUSE AND REQUEST FOR COMPLAINT</u>
<u>SCREENING PURSUANT TO U.S.C§1915A(a) AND REQUEST FOR DISCOVERY</u>

Plaintiff argues that the DEA did not pay him on Northern Star Operation that
took place on or about April 2003. Plaintiff seek help from the Honorable court
to assist him to obtain the payment under the contracts he previously had with
The DEA working as an Informant. To avoid dismissal for failure to state a
claim, the complaint has to contain a "short and plain statement of the claim
showing that the pleader is entitle to relief." Fed.R.Civ.P.8(a). it is not
necessary for the plaintiff to plead specific facts; his statement need only
"give the defendant fair notice of what the...claim is and the ground upon
which it rests."Erickson v. Pardus, U.S. 127 S.Ct. 2197, 2200(2007). In
deciding whether the complaint states a claim, the court is to accept as true
all of the factual allegations contained in the complaint. Bell Atlantic Corp.
v. Twombly, U.S. 127 S. Ct. 1955, 1965(2007). There is no heightened pleading
requirement for Pro Se prisoner civil rights complaints. Tromalm v. Washington,
362 F.3d 969, 970-71 (7th Cir.2004). Of course, if the complaint pleads facts
that show that a plaintiff does not have a claim, the complaint should be
dismissed.

1

On 10/11/2002 I signed a Confidential Source Contract with the DEA Agents
Christopher L. Hoyt, Agent John Kasmowski and GS Gary Jackson,and James Loring.
See EXHIBIT "A". The agreement was to provide Information to assist with
operation Northern Star Drug traffickers in Illinois, California, and Kentucky
for Case No. I1-03-0003/WAA7D. and I1-02-00261/WAA71. and any other
pseodoephrine cases involved with Northern Star Operation. See EXHIBIT "B". At
the time of the contract was signed by all parties I was informed by John
Kasmowski that to conceder James Loring as my handler for Northern Star
Operation and any information I collect to report that information to Agent
James Loring.

On 10/05/02 through Late February 2003 I provided Information on the daily
Basses to the Agency in regards Northern Star Operation See the DEA
investigation forms that will show the information I had provided it will match
the Defendants Names or information in the Northern Star Operation which was
completed on or about April 14, 2003. See DEA form 6 reports EXHIBIT "C". On
September 29, 2002, I was authorized by Agent John Kosmowski to meet a
Pseuoephedrine Trafficker his name (Ywammni) at the williams Truck stop in
merriville, Indiana, and I was giving one bottle of pseudoephedrine as a
sample(1000,pills)by agent Kosmowski to show the target Mr. Yammnni and for him
to inspect the quality of the Drug. After the target "Mr. Yammani"  Inspected
the Drug he ask me that he wants to by 500 cases because he was happy with the
quality of the sample.

 On or about 10/09-11/2002 I went to meet a pseudoephedrin trafficker his name
(Atiff Issa) to his store located at 75th and Cottage Grove in Chicago, and I
was authorized to take with me a sample of pseudoephedrine to allow the target
to inspect the drug, I was authorize to carry the sample by Agent Kosmowski. On
or about October of 2002, I drove to the Target Issa store with DEA agent
carrying 200 cases of pseudoephedrine in a white Dodge caravan Van and we took
the van to do the DRUG BUST AT Mr. Issa store at 79th and Ashland Ave, in
Chicago. Agents were present at that time as follow: SA, James Walsh, TFO
Kowsmowski, GS Gary Jackson, SA Christopher Hoyt, Criss Oriel, TFO Gerald
Marrero, SA Kenneth Weidner, and other that assist to survellance the area of
the operation. See EXHIBIT "●●".

The trial Transcripts will confirm that Mr. Jumah was an active CI on or about December 2002 and that EXHIBIT "I" will confirm that Mr. Jumah was active CI on or about January 2004. Also confirms that he provided information, and the information was involved more than 20 People that most of them were arrested, Cash, Assets, Cars, and Drug was Seized, in the Nurther Star Operation and they are serving time in prison for there convictions. See EXHIBIT "E" from Mr. Jumah Trial scripts.

On or about January 2003, I met with DEA agents John Kasmowski and James Loring at the Summit Police Department to go through the planing  for the next move we are going to make, then I ask for some money as a down payment, I was asked to wait by Agent Jim Loring, for the bust of Northern Star to happen then, I will get paid big amount at once, but after that conversation he reached into his pocket and gave me $100.00 dollars for toll way and gas for that day, see EXHIBIT " F" for the payment voucher form DEA -103.

Then agent Loring Installed the recorder on my body and we left to record a meeting between a Pseudoephidrin trafficker and myself at Ameer restaurant located in Worth Illinois. We were all working hard to get the job done, one time I called agent John Kasmowski to provide me with more samples of the Drug "pseudoephedrin" and he did not have the time to meet me and provide me with the samples, sometimes left me samples behind the trash dumbster.

In the late 2003, I got some information that a person want to by 200 cases of Psueduepedrine, at that time I pass the information to Agent, John Kasmawski, and Agent, Hoyt, and we setup the deal to take place the next day or two, It was easy for us to setup the Bust because we have the Drugs "Pseoduephedrine" in the same area in the Summit Police Department inside a Blue Ford Van, It was 200 cases and I help count the boxes and dock tape the side and the rear windows,That time I was wit agent hoyt and Agent Kosmowski at the back Garage Of Summit Police Department trying to get the Van ready so we could go ahead with the drug Bust.

We got the van ready and Agent Hoyt Drove it to down the street to the marked

location, while I went to get the Target to inspect the Drugs"Pseudiephedrine",
It took me less than one hour to meet the group at the named location (Harlem
Ave and Archer Rd in the portillos hot dog place), that time I had posission of
a 2nd key to the Van and I have control of the 200 cases of pseduephedrine and
I had the authority to give the target one bottle

as a sample to have for inspection. Unfortunately the deal did not happen that
day and was no arrest. On June of 2003 I was going to Aurora Police Department
to meet Officer Birent to answer some questions in regards to my statement I
gave him over the phone about my Credit Card Charges, right before I went to
meet the Police Officer, Agent Kosmowski called me and ask me to meet him and
bring with me some of the samples of the pseoduephedrine that he had give me
earlier that month, then I told him that I am going to meet the Officer at
Aurora Police Department, his response was I will meet you their because I have
to show someone the sample you are going to bring for me.

Agent Kosmowski met me at the steps of the Police Department and before I
entered the Department I gave him the Bottle of the sample he requested, I ask
Agent Kasmowslki to come with me inside to talk to the Officer and he said the
"you will be Okay don't worry" and he left. The DEA has to prepare the
requested documents and forms showing that the CI got paid in full for each
case for example the SHISH KABAB JIMMY case, that the amount was seized is
$149.000.00 and I got paid 29.800.00 which is the 20% of the seized amount. See
payment voucher on "Jimmy Shish Kabab" EXHIBIT "G" that on May 28, 2002 I was
paid $1000.00 dollars as a down payment and on March 27, 2003 I was paid the
rest of my 20% commission. But in NMrthern Star All I got is $100.00 dollars
and a promise to get paid my 20% later.

See EXHIBIT "H" letter from Assistant U.S Attorney, on January 13, 2006 meeting
in between Counsel Brown and DEA agent James Jones that Agent Jones inform Ms.
Brown that Mr. Jumah in 2003 called him four or five times requesting payments
for the information he provided while working as CI in 2001 or 2002, and I
visited the DEA office in Chicago to get payment from him. I did not go and
visited Agent Jones just like that , I knew that I have to talk to an agent
first, before I go to the DEA office I have to arrange a meeting then go meet
an agent in that building, that statement was not the truth, the truth is, that
after Northern Star Drug Bust Agent James loring promised me that I will be

taken care of and the conversation between Agent Loring and myself was recorded
on my voice mail.

See EXHIBIT "I" that thae conversation on April 17, 2003 stated the following "
Amin yes can you hear me, Jim, I can hear you, amin, Oky now is better, Jim,
Oky, so I talked to  Agent Kasmowski and he ask me to call you and he said that
you are not going to forget about me, Jim no don't worry I will take care of
you man, Just we don't know how much we have at this time, it is  going to be
little  while, Amin Oky, Jim, I am not going to forget you all right, Amin, I
am going to get my percentage, Jim, yes you are going to get your percentage,
Jim, I will give you a call tomorrow, Amin don't forget me, Jim, I won't
brother, Amin, thank you Jim, Jim, all right all, right Amin,
and after this conversation I did not see Jim Loring and he did not answer my
calls for several months.

Then I called the DEA office and someone informed me that Agent Loring had
moved to the office in Vancouver Canada and that person gave me The office phone
number for agent loring  and the the phone records in EXHIBIT "J" would show
the office phone number that I try to reach agent loring on January 09, 2004.
That time when agent Jim Loring had ask me to contact agent James Jones to help
me on getting paid faster for North Star Operation, because he is going to be
far away from Chicago and ask me to contact agent James Jones and he is going
to talk to agent Jones to speed the process of getting me paid.

On or about the same week I contacted agent James Jones and we had a
conversation about what agent Jim loring had told me,and I had told him that I
have the voice mail tape that will confirm my conversation with agent Jim
loring, at that time agent Jones ask me to write a statement about my assistant
with North Star Operation and call him back to  setup a day to meet and i did
call him back and he ask me to meet him at the DEA office and bring with me the
statement and the voice mail tape and he ask me to bring any copy's of the
voice mail tape i have in my possession including the original tape and not to
mention that request to anyone or I will not get paid and I will get in deep
trouble.

On or about January 09, 2004 I visited the DEA Office to meet with agent Jones
to deliver the written statement and the tapes, (the DEA has a sign up log
book, it will prove that I was there in January of 2004 and other times), at



that time I ask to see Agent Jones I met agent Jones and he ask me what is
going on and I told him that there is something is going on with Ali Qasem from
California and that agent Kasmowski Knew everything about the deal. and he
responded to me saying that, you are doing a good job and keep up the good
work,then he ask me if I have any extra copy's of the tape because if I do, I
will not get his help for me to get paid on Northern Star Operation and
threaten me if I had kept an extra copy of the tape I will face punishment.

After that meeting he promise to submit everything to his boss and he will call
me in few days.

The phone records shows that I called agent James Jones almost every week
between mid of 2003 through February of 2004. See EXHIBIT "K" for agent James
Jones phone number records that I called him more than five times to request
payment.

Every time I call agent James Jones to ask about my payment,I also called agent
Kasmowski and FBI agent John Diwick.

The payment Of $29.800.00 dollars was the payment for Jimmy SHISH KABAB It
wasn't the final payment or a down payment for NORTHERN STAR OPERATION.
The operation of Nllrthern Star was completed on or about April 14, 2003, and
there is no way that the DEA paid me in full for my assistant the 20% with out
Knowing the amount of the Drugs, the amount of the cash, or the value of the
seized assets.

The records in the case United States v. Jumah does not show every piece of the
puzzle or all the facts of my job with the DEA.

The micro tape Of the voice mail between Mr. Jumah and DEA agent James loring
will prove to the Honorable Court that Mr. Jumah was an active CI and he is in
title of getting paid for his job assisting the DEA with NORTHERN STAR
OPERATION. There are an Error on record that I had requested payments for the
past 12 years which is uncorrect, all I'm asking that to get paid for my
assistant with Northern Star operation and nothing more.

After Northern Star ended I was asked by Agent Hoyt and Agent Kosmowski to start working on a new Investigation,it was late 2003, at that time I got a hand written document from agent Hoyt and with his hand written, see EXHIBIT "L".

It took over one year to finalized "Northern Star Operation" and the DEA has all the records from hand written to conversations recordings, wire taping, and DEA form-6, or Orally statements.

Respectfully the Plaintiff, Amin Jumah, request from the Honorable Court to grant his Motion and Order Complaint Screening, Issue Summons and allow the Plaintiff to have all record on Northern Star Operation from The Drug Enforcement Administration.

Palintiff also respectfully requests from the Honorable Court to accept his statement of showing cause in response to The Honorable Judge Darrah May 12, 2008 order.

I, Amin Jumah, hereby swear and affirm that the information in this motion are true and correct, based upon information and belief.

Respectfully submitted,

Amin Jumah, Plaintiff     Date.    6/9/08

# Exhibit A



6. I have not been authorized to participate in any criminal activity except as specifically authorized in writing by a prosecutor and/or my Controlling Investigators. I understand that I may be prosecuted for any unlawful conduct that I may have committed in the past or may commit in the future.

7. I understand that I am not an employee of the DEA or the United States Government and may not represent myself as such.

8. I understand that I may not enter into any contract or incur any obligation on behalf of the United States Government or DEA, except as specifically instructed and approved by the DEA.

9. I understand that although I may be eligible for compensation for my services, the DEA reserves the exclusive right to determine whether I will receive any payment or compensation and to determine the amount of such payment or compensation.

10. I understand that I am liable for any taxes that may be due on any compensation or payments provided by DEA.

11. I understand that no promises may be made, other than by the Immigration and Naturalization Service (INS), regarding my immigration status or right to enter or remain in the United States.

12. I understand that I am only authorized to participate or engage in the specific conduct set forth above, and that I may not participate or engage in any other illegal activity.

13. I understand that this agreement is in force from ___10/11/02___ until ___10/11/03___ (not to exceed one year).

14. I understand that I may not, under any circumstances, participate in an act of violence; participate in any act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or the fabrication, alteration, or destruction of evidence); participate in any activity designed to obtain information by an unlawful method (e.g., breaking and entering, illegal wiretapping, illegal opening of the mail, trespass amounting to illegal search, etc.); initiate or instigate a plan or strategy to commit a federal, state, or local offense.

15. I understand that if I am asked by any person to participate in any of the prohibited conduct listed in (14) above, or if I learn of plans to engage in such conduct, I must immediately contact my Controlling Investigators.

I fully understand and agree to the above.

Confidential Source: _____ 10/11/02
                     Signature                  Date

                     CS-01-105544
                     Confidential Source No.

Controlling Investigator: _____ 10/11/02
                          Signature                 Date

Controlling Investigator: _____ 10-11-02
                          Signature                 Date

# Exhibit B

U.S. Department of Justice - Drug Enforcement Administration

# CONFIDENTIAL SOURCE ESTABLISHMENT

B

## PRIVACY ACT INFORMATION

The following Privacy Act Statement must be read or shown to the confidential source before hand. "Collection of personal history information is authorized under Title 21, United States Code. Your supplying of identifying personal information is voluntary. This information is an element used to create a record of your cooperation. However, failure to provide the information requested will disqualify you from becoming a confidential source."

| 1. Source Name *(Last, First, Middle)* | | | 2. No. | | | |
|---|---|---|---|---|---|---|
| JUMA, AMIN | | | **CS** 0 1 — 1 0 5 5 4 4 | | | |

| 3. Alias Name | 4. Source Date of Birth *(MM-DD-YYYY)* | 5. Alternate Date of Birth |
|---|---|---|
| AMEN, ABD | 02-09-1963 | 09-02-1963 |

| 6. NADDIS No. | 7. FBI No. | 8. Social Security No. | 9. Misc. Numbers (e.g., TECS; State I.D.; Registrant; etc.) |
|---|---|---|---|
| NEGATIVE | NEGATIVE | 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 | NA |

| 10. Place of Birth (City, State/Country) | 11. Citizenship (Country) | 12. Alien Status ☐ N/A |
|---|---|---|
| JERUSALEM, ISRAEL | ISRAEL | [X] Legal (Alien Registration No.) a070487284 |

| 13. Race | | 14. Ethnicity | 15. Sex | 16. Color Hair | 17. Height |
|---|---|---|---|---|---|
| ☐ Black | ☐ Asian-Pacific Islander | ☐ Hispanic | [X] Male | BLACK | 6 ' 02 " |
| [X] White | | [X] Non-Hispanic | | 18. Color Eyes | 19. Weight |
| ☐ Native American | ☐ Unknown | ☐ Unknown | ☐ Female | BROWN | 187 lbs. |

| 20. Address (No., Street, Unit, City, State/Country, Zip Code) | 21. Identifying Characteristics (Scars, tattoos, marks, physical defects, etc.) |
|---|---|
| 799 ROYAL SAINT GEORGE, APT. 509 NAPERVILLE, IL 60563 CELLULAR #630-479-3332 | NA |

| a. Telephone Number (Include Area Code) 630-355-5150 | |

| 22. Occupation | 23. Employer Name and Address |
|---|---|
| CAR SALESMAN | GARTNER BUICK 4033 OGDEN AVENUE AURORA, IL 60504 |

a. Employer Telephone Number (Include Area Code) 630-851-2500 EXT. 155

| 24. Passport No. | a. Issue Date | b. Issuing Country | c. Expiration Date | d. Name on Passport |
|---|---|---|---|---|
| 0615766 | 7 5-93 | ISRAEL | 6-5-94 | AMIN I. ABD JUMA |

| 25. Driver's License No. | a. Issuing State/Country | b. Expiration Date | c. Name on License |
|---|---|---|---|
| A132-0056-3250 | ILLINOIS | 09-02-2006 | ABD JUMA AMIN EID |

| 26. FAMILY INFORMATION *(Last, First, Middle Name)* | b. Age or DOB | c. Address (No. Street, Unit, City, State/Country) & Phone No. |
|---|---|---|
| **Father** | | |
| EID JUMA | 64 | JERUSALEM |
| **Mother** | | |
| FATIMA JUMA | 62 | JERUSALEM |
| [X] Spouse ☐ Companion ☐ Paramour | | |
| CATALINA HERNANDEZ JUMA | 03-07-1970 | #20 |
| **Children** | | |
| DAVID JUMA | 5 | #20 |
| | | |
| SAIED JUMA | 13 | #20 |
| | | |
| SAIED JUMA | 11 | #20 |
| **Other Relatives** *(Name)* *(Relationship)* | | |
| | | |
| | | |
| | | |

| 27. Confidential Source Type (Check applicable block(s)) ☐ Limited Use | 28. Confidential Source Action (Check one) |
|---|---|
| [X] Regular ☐ Defendant ☐ Restricted Use ☐ Protected Name ☐ Special Pymt | ☐ Original ☐ Concurrent Use [X] Reactivation |

**29. Source Type Qualification** (Brief statement of situation qualifying the Source Type)

No criminal history. No drug use. Prior uses have been acceptable.

**30. Type of Cooperation** (Brief statement on proposed cooperation; include case number and target's NADDIS number(s) - if any.)

JUMA will provide information pertaining to pseudoephedrine traffickers in Illinois, California, and Kentucky for case number I1-03-0003/WAA7D.

# Exhibit C

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-00C3 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt At: Chicago Field Division | X | CS-01-105544 | 6. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ ☐ ☐ ☐ | | 8. Date Prepared 10/10/02 | |

9. Other Officers: SA Christopher O'Reilly, SA Kenneth Weidner, SA Sheila Lyons, TFO Gerald Marrero

10. Report Re: Surveillance of Mustafa YWAMMNI and NAIM at the Empress Casino on October 5, 2002 and the Acquisition of Exhibits N-1 and N-2

### DETAILS

1. On October 5, 2002, at approximately 9:00 p.m., surveillance was established in the area of the Empress Casino in Joliet, Illinois.

2. At approximately 9:45 p.m., CS-01-105544, hereafter referred to as the CS, placed a telephone call to Mustafa YWAMMNI. YWAMMNI told the CS to meet him in ten minutes in the restaurant at the Empress Casino in Joliet, Illinois.

3. At approximately 10:00 p.m., the CS went inside the Empress Casino and met with YWAMMNI, NAIM, and another unknown Arab male. The CS stated that NAIM did most of the talking. NAIM told the CS he did not have any money to give to the CS today. NAIM told the CS that Atif (ISA) had sold him 100 cases of pseudoephedrine for $85,000.00. NAIM told the CS he had taken the pseudoephedrine to California. NAIM told the CS he then gave a bottle of pills to his wife who brought the pills to the "cooker". The "cooker" told his wife that the pills were no good. NAIM told the CS he returned 50 cases of pseudoephedrine to ISA and was refunded $32,000.00. NAIM told the CS he had anticipated paying the CS $53,000.00 which ISA was to repay him. NAIM told the CS to give him one more week to get the money together to purchase 500 cases of pseudoephedrine.

| 11. Distribution: Division | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10-11-02 |
|---|---|---|
| District | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10-21-02 |
| Other   SARI | | |

DEA Form  - 6
(Jul. 1996)
    clh
4 - Extra

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-03-0003 | 2. G-DEP Identifier WAA7D |
|---|---|---|
| *(Continuation)* | 3. File Title YWAMMNI, Mustafa | |
| 4. Page  2  of  2 | | |
| 5. Program Code | 6. Date Prepared 10/10/02 | |

4.   At approximately 11:00 p.m., surveillance was terminated.

5.   Surveillance located YWAMMNI's 1999 white Cadillac Escalade bearing
     Kentucky registration, in the handicap parking lot at the Empress
     Casino.


## CUSTODY AND DESCRIPTION OF EVIDENCE

1.   Exhibit N-1 is described as two audiocassette tapes containing a
     recorded conversation, which occurred on October 5, 2002 at the
     Empress Casino in Joliet, Illinois.  The conversation was between the
     CS, YWAMMNI, NAIM, and an unknown subject.  SA Christopher Hoyt
     maintained custody of Exhibit N-1 until transferred to the Chicago
     Division Non-Drug Evidence Custodian for safekeeping.

2.   Exhibit N-2 is described as one micro cassette tapes containing two
     phone calls, which occurred on October 5, 2002 at the Empress Casino
     in Joliet, Illinois.  The telephone conversations were between the
     CS, YWAMMNI and NAIM.  SA Christopher Hoyt maintained custody of
     Exhibit N-2 until transferred to the Chicago Division Non-Drug
     Evidence Custodian for safekeeping.


## INDEXING

1.   ISA, Atif – NADDIS Pending.

2.   NAIM, - NADDIS Pending.

3.   YWAMMNI, Mustafa – NADDIS Pending.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

04CR237                                      00337

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. 11-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Chris Hoyt At: Chicago, IL | ☒ | CS-01-1015544 | 6. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ ☐ ☐ | | 8. Date Prepared 10/11/02 | |

9. Other Officers: TFO John Kosmowski

10. Report Re: Case Initiation Reprt

## BASIS OF IVESTIGATION

On October 4, 2002, CS-01-1015544, hereafter referred to as the CS, was interviewed by TFO John Kosmowski and SA Christopher Hoyt regarding Mustafa YWAMMNI. The CS stated YWAMMNI was interested in purchasing five hundred cases of pseudoephedrine pills from the CS for $1,000.00 per case.

## TARGETS

The immediate targets of this investigation will be YWAMMNI and members of his pseudoephedrine trafficking organization.

## INDEXING

1. YWAMMNI, Mustafa - NADDIS Negative. Alias: Mustafa YANI, W/M, DOB: 04-01-49, 5'10", 200 lbs., Black Hair, Brown Eyes, SSN: 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, Address: 6128 Woodcrest Drive, Burlington, Kentucky 41005, Home Telephone: 859-689-0604, Cellular, 859-816-4578, Vehicle: 1999 White Cadillac Escalade, Kentucky Registration C6662.

| 11. Distribution: Division | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10·11·02 |
|---|---|---|
| District | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10·11·02 |
| Other   SARI | | |

DEA Form - 6 (Jul, 1996)
clh
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used

04CR237                    00330

## REPORT OF INVESTIGATION

Page 1 of 3

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt<br>At: Chicago Field Division | ☒ | CS-01-105544 ☐ ☐ ☐ ☐ | 6. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared 10/11/02 | |
| 9. Other Officers: TFO John Kosmowski | | | | |

10. Report Re: Initial Debriefing of CS-01-105544 on October 4, 2002 Regarding Mustafa YWAMMNI

### SYNOPSIS

1. On October 4, 2002, at approximately 9:45 a.m., SA Christopher Hoyt and TFO John Kosmowski debriefed CS-01-105544, hereafter referred to as the CS. The CS provided information pertaining to Mustafa YWAMMNI and his pseudoephedrine trafficking organization. The following report is not all-inclusive, merely an outline of the information provided by the CS at the time of the interview.

### DRUG RELATED INFORMATION

1. The CS stated that in May 2002, YWAMMNI drove to Chicago from Kentucky in a 1999 white Cadillac Escalade. YWAMMNI met with the CS and discussed the recent seizure of money from Hussein HAFEZ. YWAMMNI told the CS to let him know if the CS had any pseudoephedrine, because he was interested in purchasing 100 cases. YWAMMNI told the CS he had a partner in Kentucky named NAIM, also known as Mohammed.

2. The CS stated that approximately one week later YWAMMNI returned to Chicago in the Escalade and met with the CS. YWAMMNI was still interested in purchasing pseudoephedrine from the CS. YWAMMNI used the CS' cellular telephone and placed a call to NAIM at 859-689-0604. NAIM asked the CS when the CS would be able to hook him up with "100

| 11. Distribution: Division | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10-18-02 |
|---|---|---|
| District | | |
| Other    SARI | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10-18-02 |

DEA Form    - 6
(Jul. 1996)
clh
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

04CR237                                                         00355

| REPORT OF INVESTIGATION | 1. File No. I1-03-0003 | 2. G-DEP Identifier WAA7D |
| --- | --- | --- |
| (Continuation) | 3. File Title YWAMMNI, Mustafa | |
| 4. Page 2 of 3 | | |
| 5. Program Code | 6. Date Prepared 10/11/02 | |

Tapes". NAIM told the CS if he were able to get the "tapes" at a good price he would take "500 tapes" every other week. NAIM told the CS he needed to purchase the first "100 tapes" on credit. NAIM told the CS to travel with him to California. Once there, NAIM said he would pay the CS for the pseudoephedrine. The CS stated the word "tapes" was used a code word for cases of pseudoephedrine.

3. The CS stated that for the past four months there have been numerous telephone conversations between the CS and YWAMMNI negotiating for the purchase/sale and delivery of 500 cases of pseudoephedrine.

4. The CS stated that approximately three weeks ago YWAMMNI drove to Chicago in the Escalade and arrived at the CS' place of business. YWAMMNI told the CS he had $23,000.00 and wanted to purchase 100 cases of pseudoephedrine. The CS told YWAMMNI to get $100,000.00 together if he was interested in purchasing the pseudoephedrine. YWAMMNI left.

5. The CS stated that two or three days later YWAMMNI told the CS that NAIM was also in Chicago and would meet the CS. The CS stated he did not meet YWAMMNI or NAIM this time.

6. The CS stated that approximately one week ago, NAIM called the CS. NAIM told the CS he had been in Chicago with $85,000.00 and purchased 100 cases of pseudoephedrine from Atef ISSA. NAIM told the CS he took the 100 cases of pseudoephedrine to Fresno, California. NAIM told the CS he had given a portion of pseudoephedrine to his cooker who in turn brought the bottle to the "cooker". NAIM told the CS the pseudoephedrine was no good. NAIM told the CS he returned 50 cases of pseudoephedrine to ISSA. NAIM told the CS ISSA refunded him $32,000.00. NAIM asked the CS to go to ISSA's store, MALAK FOOD and LIQUOR, located at 75th and Cottage Grove in Chicago, Illinois and talk to ISSA.

7. The CS went to the store the following day and met with ISSA. The CS told ISSA that the CS knew ISSA's brother. The CS then asked ISSA why he had given NAIM the bad pseudoephedrine. ISSA told the CS that he didn't know the pseudoephedrine was bad. ISSA told the CS he had

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

**1 - Prosecutor**

Previous edition dated 8/94 may be used.

# REPORT OF INVESTIGATION

*(Continuation)*

| | |
|---|---|
| 1. File No. I1-03-0003 | 2. G-DEP Identifier WAA7D |
| 3. File Title YWAMMNI, Mustafa | |

4.

Page  3  of  3

5. Program Code

| 6. Date Prepared 10/11/02 |
|---|

gotten the pseudoephedrine from Abu JAMAL around 103rd and Harlem. ISSA told the CS he was looking for JAMAL to get the rest of the money to pay NAIM back.

8.   The following day NAIM called the CS and told the CS that ISSA said the CS was working for the government.

9.   On September 29, 2002, the CS met YWAMMNI at the Williams Truck Stop in Merrillville, Indiana.  YWAMMNI told the CS he wanted to purchase 500 cases of pseudoephedrine.  YWAMMNI told the CS the money was already in California.  YWAMMNI told the CS he would pay the CS $40,000.00 up front.  YWAMMNI told the CS the money would come from ISSA.  The CS told YWAMMNI the price for the pseudoephedrine would be $1,000.00 per case.

10.  On October 3, 2002, the CS was called by YWAMMNI and NAIM.  The call came in from 513-262-5428.  YWAMMNI and NAIM told the CS they would be in Chicago on October 5, 2002.  YWAMMNI and NAIM told the CS that they wanted to come to here to sit down and discuss the arrangements for the pseudoephedrine.

## INDEXING

1.   ISSA, Atef – NADDIS Negative.  W/M, 6'0", 190 lbs.

2.   HAFAZ, Hussein – NADDIS Negative.

3.   JAMAL, Abu – NADDIS Negative.

4.   MALAK FOOD and LIQOUR – NADDIS Negative.  75th and Cottage Grove, Chicago, Illinois, Telephone Number: 773-994-3626.

5.   NAIM – NADDIS Negative.  W/M, Kentucky, Telephone Number: 513-262-5428.

6.   YWAMMNI, Mustafa – NADDIS Pending.

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**4 - Extra**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

## REPORT OF INVESTIGATION

Page 1 of 3

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|

5. By: SA Christopher L. Hoyt
   At: Chicago Field Division

Related Files: ☒ CS-01-105544
☐
☐
☐

6. File Title
YWAMMNI, Mustafa

| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | 8. Date Prepared 10/16/02 |
|---|---|

9. Other Officers: SA James Walsh, TFO John Kosmowski, GS Gary Jackson

10. Report Re: Supervisory Debriefing of CS-01-105544 on October 15, 2002

### DRUG RELATED INFORMATION

1.  On October 15, 2002, at approximately 4:00 p.m., CS-01-105544, hereafter referred to as the CS, was debriefed by SA Christopher Hoyt, TFO John Kosmowski, SA James Walsh, and GS Gary Jackson. The following report is not all-inclusive, merely a synopsis of the information provided by the CS at the time of the interview. Reference is made to DEA-6 by SA Christopher Hoyt, dated 10-11-02, under subject file, RE: Initial Debriefing of CS-01-105544 on October 4, 2002 Regarding Mustafa YWAMMNI.

2.  CS stated that on October 15, 2002, the CS met Atef ISSA at Cub Foods located at 10280 S. Harlem Avenue in Bridgeview, Illinois. During this meeting, CS stated that ISSA asked the CS if the CS "was ready." (See referenced DEA-6 in which CS provided information regarding YWAMMNI's interest in purchasing large quantities of pseudoephedrine from the CS). The CS stated that he/she told YWAMMNI the he/she was ready and asked ISSA if he was ready. ISSA told the CS to bring the pseudoephedrine to his store, MALAK FOOD MARKET, located at 7458 S. Cottage Grove, Chicago, IL on October 18, 2002. The CS stated that he asked ISSA if ISSA was sure. The CS stated that he/she told ISSA that ISSA "was crazy" to have the pills delivered to his store and that ISSA replied that it was the safest place to bring the pseudoephedrine. The CS told ISSA to bring it to the back door of his store and that ISSA said nobody would know what they were doing.

| 11. Distribution: Division | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10-16-02 |
|---|---|---|
| District | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10-16-02 |
| Other    SARI | | |

DEA Form - 6
(Jul. 1996)
clh
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-03-0003 | 2. G-DEP Identifier WAA7D |
|---|---|---|
| *(Continuation)* | 3. File Title YWAMMNI, Mustafa | |
| 4. Page  2  of  3 | | |
| 5. Program Code | 6. Date Prepared 10/16/02 | |

CS stated ISSA told the CS to make sure "it" was the good stuff because ISSA told the CS that ISSA knew there was "alot of bad stuff out there." The CS stated that he/she told ISSA "the stuff is guaranteed." The CS stated that he/she told ISSA that when ISSA took the pseudoephedrine to California to the cook the CS "guaranteed it." The CS stated that he/she told ISSA if the pseudoephedrine was bad then the CS would take it back. The CS stated that ISSA said he just wanted to make sure it was good so he wasn't embarrassed. The CS stated that he/she told him, once again, the pseudoephedrine was "guaranteed" and it was "not like the stuff" ISSA gave to Kentucky area pseudoephedrine traffickers. The CS stated that while he/she was meeting with ISSA, the CS' cell phone rang. The CS stated the caller was YWAMMNI. The CS stated that he/she told ISSA that YWAMMNI wanted to purchase 300 cases from the CS. The CS stated that ISSA told the CS that he trusted the CS and when ISSA took the pseudoephedrine to California they will find out if the pills were good. The CS stated that ISSA then told the CS the deal was for $140,000. The CS stated that he/she told ISSA that the deal was for $150,000. The CS stated that ISSA continued to ask the CS to sell him 200 cases of pseudoephedrine for $140,000. The CS stated that ISSA told the CS to come to his store on 10-18-02. The CS stated that he/she again asked ISSA to do the deal for $150,000. The CSs stated that ISSA insisted on a price of $140,000 and the CS agreed.

## NON-DRUG RELATED INFORMATION

Negative at this time.

## FINANCIAL INFORMATION

Negative at this time.

## TERRORIST INFORMATION

Negative at this time.

DEA Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

1 - Prosecutor

| REPORT OF INVESTIGATION | 1. File No.<br>I1-03-0003 | 2. G-DEP Identifier<br>WAA7D |
|---|---|---|
| *(Continuation)* | 3. File Title<br>YWAMMNI, Mustafa | |
| 4.<br>Page  3  of  3 | | |
| 5. Program Code | 6. Date Prepared<br>10/16/02 | |

## INDEXING

1.  ISSA, Atef - NADDIS Pending.  Address: 110th and Moody, Vehicle:  1994 Maroon GMC van, Illinois Registration B424 792.

2.  MALAK FOOD MARKET – NADDIS Negative.  AKA: MALAK FOOD AND LIQUOR, Address: 7458 S. Cottage Grove, Chicago, Illinois 60619, Telephone: 773-994-7112.

3.  YWAMMNI, Mustafa – NADDIS Pending.

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

4 - Extra

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt  At: Chicago Field Division | ☒ | CS-01-105544 ☐ ☐ ☐ | 5. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | ☐ ☐ | 6. Date Prepared 10-21-2002 | |

9. Other Officers: SAs Christopher O'Reilly, James Walsh, Kenneth Weidner, Charles Ellison
TFOs John Kosmowski, Frank Teutonico, Rich Cannella, Roberto Guerra, GS Gary Jackson

10. Report Re: Acquisition of Exhibits N-7 and N-8 on October 17, 2002

### DETAILS

1. On October 17, 2002, at approximately 3:05 p.m., SA Weidner and SA Ellison observed the CS return to and enter Atef ISSA's business, AMI ENTERPRISES, located at 7800 S. Ashland, Chicago, Illinois. The CS met with ISSA and discussed the purchase/sale of pseudoephedrine. Their conversation was recorded and is identified as Exhibit N-7.

2. On October 17, 2002, the CS placed a series of telephone calls to ISSA, Mustafa YWAMMNI, and NAIM. All of their conversations were recorded and are identified as Exhibit N-8.

### CUSTODY AND DESCRIPTION OF EVIDENCE

1. Exhibit N-7 is described as one digital micro-cassette tape containing recorded conversations between the CS and ISSA. Exhibit N-7 was made on October 17, 2002 at 7800 S. Ashland, Chicago, Illinois. SA Hoyt maintained custody of Exhibit N-7 until transferred to the Chicago Division Non-Drug Evidence Custodian for safekeeping.

| 11. Distribution: Division  District  Other  SARI | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10·28·02 |
|---|---|---|
| | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10·28·02 |

DEA Form - 6
(Jul. 1996)
    clh
4 - Extra

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | I1-03-00C3 | WAA7D |
| | 3. File Title | |
| | YWAMMNI, Mustafa | |
| **4.** | | |
| Page  2  of  2 | | |
| 5. Program Code | 6. Date Prepared | |
| | 10-21-2002 | |

2.   Exhibit N-8 is described as one cassette tape containing recorded
telephone conversations between the CS and ISSA, the CS and YWAMMNI,
and the CS and NAIM.  Exhibit N-8 was made on October 17, 2002 at the
Summit Police Station, Summit, Illinois.  SA Hoyt maintained custody
of Exhibit N-8 until transferred to the Chicago Division Non-Drug
Evidence Custodian for safekeeping.


**INDEXING**

1.   ISSA, Atef - NADDIS Pending.  Previously identified as Atif ISA.

2.   YWAMMNI, Mustafa - NADDIS Pending.

3.   AMI ENTERPRISES - NADDIS Pending.

4.   NAIM ※ NADDIS Pending.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

04CR237

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt   At: Chicago Field Division | ☒ | CS-01-105544 | 6. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed   ☐ Action Requested By: | ☐ ☐ ☐ | | 8. Date Prepared 10/22/02 | |

9. Other Officers: SA Kenneth Weidner, SA Christopher O'Reilly, SA Charles Ellison, SA James Walsh, TFO Frank Teutonico, TFO John Kosmowski, TFO Rich Cannella, TFO Roberto Guerra

10. Report Re: Surveillance of Atef ISSA on October 17, 2002 and the Acquisition of Exhibit N-5 and N-6

### DETAILS

1.  On October 17, 2002, at approximately 10:30 a.m., surveillance was established at Atef ISSA's business, AMI Enterprises located at 7800 S. Ashland, Chicago, Illinois.

2.  Upon arrival, SA Kenneth Weidner observed a blue and gray 1992 GMC van, Illinois registration 359 3450, parked next to ISSA's business. The van was registered to Elayyan MOHAMMAD of 12645 Central Avenue, Alsip, Illinois.

3.  At approximately 11:11 a.m., SA Weidner, TFO Teutonico, and TFO Cannella observed the CS arrive at and enter ISSA's business.

4.  At approximately 11:25 a.m., SA Hoyt, SA Walsh, SA Ellison, and SA Weidner observed the CS exit the business and leave the area.

5.  At approximately 2:50 p.m., SA Weidner and SA Ellison observed ISSA standing in front of his business talking on a telephone. ISSA was wearing a brown sweater and blue jeans.

6.  At approximately 3:05 p.m., SA Weidner and SA Ellison observed the CS return to and enter ISSA's business.

7.  At approximately 3:18 p.m., SA Weidner and SA Ellison observed the CS and ISSA exit the business and stand outside talking.

| 11. Distribution: Division   District   Other   SARI | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 10-17-02 |
|---|---|---|
| | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 10.22.02 |

DEA Form - 6
(Jul. 1996)
clh
4 - Extra

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-03-00C3 | 2. G-DEP Identifier WAA7D |
| (Continuation) | 3. File Title YWAMMNI, Mustafa | |
| 4. Page 2 of 2 | | |
| 5. Program Code | 6. Date Prepared 10/22/02 | |

8.   At approximately 3:19 p.m., SA Weidner and SA Ellison observed ISSA walk back into his business.  They also observed the CS leave the area.

9.   The CS returned to a pre-determined location.

10.   At approximately 3:23 p.m., surveillance was terminated.

11.   The CS was searched prior to and after the meetings with ISSA.

## CUSTODY AND DESCRIPTION OF EVIDENCE

1.   Exhibit N-5 is described as one digital micro-cassette tape containing recorded conversations between the CS and ISSA.  Exhibit N-5 was made on October 17, 2002 at 7800 S. Ashland, Chicago, Illinois.  SA Hoyt maintained custody of Exhibit N-5 until transferred to the Chicago Division Non-Drug Evidence Custodian for safekeeping.

2.   Exhibit N-6 is described as one cassette tape containing recorded conversations between the CS and ISSA.  Exhibit N-6 was made on October 17, 2002 at 7800 S. Ashland, Chicago, Illinois.  SA Hoyt maintained custody of Exhibit N-6 until transferred to the Chicago Division Non-Drug Evidence Custodian for safekeeping.

## INDEXING

1.   ISSA, Atef - NADDIS Pending.

2.   AMI ENTERPRISES - NADDIS Negative.  7800 S. Ashland, Chicago, Illinois, Telephone Number:  773-873-3080, Operated by Atef ISSA.

3.   MOHAMMAD, Elayyan - NADDIS Negative.  Arab Male, DOB: 10-11-70, Black Hair, Brown Eyes, 5'10", 150 lbs , Addresses:  12645 Central Avenue, Alsip, Illinois 60803 and 5901 W. 88th Place, Oak Lawn, Illinois 60453, Vehicle:  1992 blue and gray GMC van, Illinois Registration: 359 3450.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**4 - Extra**

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: TFO Roberto Guerra  At: Chicago, Illinois | ☒ | CS-01-105544 | 6. File Title  YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed  ☐ Action Requested By: | ☐ ☐ ☐ ☐ | | 8. Date Prepared  10/29/02 | |

9. Other Officers: SA's Christopher Hoyt, James Walsh, Kenneth Weidner, Christopher O'Reilly and TFO's John Kosmowski and Frank Teutonico

10. Report Re: SURVEILLANCE OF MEETING BETWEEN CS-01-105544 AND ATEF ISSA ON 10-15-02 AND ACQUISITION OF EXHIBIT N-3

### DETAILS

1. On October 15, 2002, at approximately 3:10 p.m., surveillance was established in the area of Hollywood Video at 10268 S. Harlem Ave., Bridgeview, Illinois. Surveillance was established after the CS-01-105544 (CS) made a phone call to Atef ISSA in order to have a meeting. During that phone call ISSA told the CS that he was at the Hollywood Video on Harlem and that the CS could go there to meet ISSA.

2. At approximately 3:20 p.m., TFO Roberto Guerra went into the Hollywood Video and observed a male of Arabian descent (later identified as ISSA) wearing a blue long sleeve shirt and blue jeans at the counter talking on a cellular telephone. TFO Guerra observed no other customers in the Hollywood Videos. TFO Guerra related the information to the other agents.

3. At approximately 3:20 p.m., TFO Guerra observed ISSA exit the Hollywood Video and walk towards a Red Chevrolet mini-van bearing Illinois registration B424792 (vehicle was registered to Said KAISI, 5109 N. Claremont Ave., Chicago, Illinois). ISSA entered the van through the driverside. After a brief moment ISSA left the van and walked into the Cub Foods next door to the Hollywood Videos.

4. At approximately 3:40 p.m., TFO Guerra observed the CS arrive into the parking lot and walk into the Cub Foods.

| 11. Distribution: Division | 12. Signature (Agent) *Roberto Guerra*  Roberto Guerra, Task Force Officer | 13. Date  10-29-02 |
|---|---|---|
| District | 14. Approved (Name and Title)  Gary A. Jackson | 15. Date  10.29.02 |
| Other | Group Supervisor | |

DEA Form    - 6  
(Jul. 1996)  
rg

**DEA SENSITIVE**  
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.  
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | I1-03-0003 | WAA7D |
| *(Continuation)* | 3. File Title | |
| | YWAMMNI, Mustafa | |
| 4. | | |
| Page 2 of 2 | | |
| 5. Program Code | 6. Date Prepared | |
| | 10/29/02 | |

5. At approximately 3:49 p.m., SA Weidner observed the CS and ISSA exit the Cubs Foods having a conversation.

6. At approximately 3:55 p.m., SA Weidner observed the meeting end and observed the CS and ISSA walk to their own vehicles.

7. The CS went to a pre-determined location. The CS was searched prior to and after the meeting with ISSA.

8. Surveillance followed ISSA to 11030 S. Moody, Chicago Ridge, Illinois.

9. At 5:00 p.m., Surveillance was terminated.

## CUSTODY OF EVIDENCE

**EXHIBIT N-3:** Exhibit N-3 is described as one audiocassette tape recording of the meeting between the CS and ISSA. SA Christopher Hoyt maintained custody of Exhibit N-3 until the exhibit was transferred to the Chicago Field Division Non-Drug Evidence Custodian for safekeeping.

## INDEXING

1. ISSA, Atef-NADDIS-Pending.AKA:Isa, Atif Mohammad.Male of Arabian descent; DOB:02-01-76; HGT:6'03"; WGT:140; HAIR:Brown; EYES:Brown; Illinois D/L:I200-0137-6032; SSN: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; FBI:926671DB6; Address:1130 S. Moody, Chicago Ridge, Illinois.

2. KAISI, Said-NADDIS-Negative. Registered owner of 1994 Red GMC mini-van Illinois registration B424792 seen during surveillance. Male of Arabian descent.DOB:10-08-61; HGT:5'06"; WGT:130; HAIR:Black; Eyes:Brown; Illinois D/L:K200-7806-1287; Address:5109 N. Claremont, Chicago, Illinois.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

# REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No<br>I1-03-0003 | 4. G-DEP Identifier<br>WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt<br>At: Chicago Field Division | ☒ ☐ ☐ ☐ ☐ | CS-01-105544 | 6. File Title<br>YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | | 8. Date Prepared<br>10/30/02 | |

9. Other Officers: TFO John Kosmowski, SA Kenneth Weidner

10. Report Re: Debriefing of CS-01-105544 on October 29, 2002 Regarding Atif ISA

## DRUG RELATED INFORMATION

1. On October 29, 2002, at approximately 2:20 p.m., SA Christopher Hoyt, SA Kenneth Weidner, and TFO John Kosmowski debriefed CS-01-105544, hereafter referred to as the CS. The CS provided the following information pertaining to Atif ISA and his pseudoephedrine trafficking organization. The following report is not all-inclusive, merely an outline of the information provided by the CS at the time of the interview.

2. The CS stated there has been no communication between the CS and Atif ISA, the CS and Mustafa YWAMMNI, or the CS and NAIM, since October 17, 2002.

3. On October 29, 2002, the CS attempted to contact ISA by phone. Each time ISA placed a call to ISA, ISA did not answer the phone.

## NON-DRUG RELATED INFORMATION

1. The CS did not provide any Non-Drug related information at this time.

## TERRORIST INFORMATION

| 11. Distribution:<br>Division<br><br>District<br><br>Other    SARI | 12. Signature (Agent)<br>SA Christopher L. Hoyt | 13. Date<br>10-30-02 |
|---|---|---|
| | 14. Approved (Name and Title)<br>GS Gary Jackson | 15. Date<br>11/1/02 |

DEA Form    - 6
(Jul. 1996)
clh
4 - Extra

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-03-0003 | 2. G-DEP Identifier WAA7D |
|---|---|---|
| *(Continuation)* | 3. File Title YWAMMNI, Mustafa | |

| 4. Page 2 of 2 | |
|---|---|
| 5. Program Code | 6. Date Prepared 10/30/02 |

1.   The CS did not provide any terrorist information at this time

**INDEXING**

1.   ISA, Atif Mohammad - NADDIS Pending.   Alias Atef ISSA, Arab Male, DOB: 02-01-76, 6'03", 160 lbs., Brown Hair, Brown Eyes, Address: 11030 Moody Avenue, Chicago Ridge, Illinois 60415, Illinois Driver's License Number: I200-0137-6032, Vehicles: 1998 BMW, Illinois Registration Y329771, 1996 Mercury, Illinois Registration 3638912, 1997 Acura, Illinois Registration J983434, 2002 Chevrolet, Illinois Registration 6462YL.

2.   NAIM - NADDIS Pending.

3.   YWAMMNI, Mustafa - NADDIS Pending.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

**4 - Extra**

04CR237                                                     00319

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-02-0261 | 4. G-DEP Identifier WAA7I |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt At: Chicago Field Division | ☒ ☐ ☐ | CS-01-105544 | 6. File Title JESSY | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ ☐ | | 8. Date Prepared 10/30/02 | |
| 9. Other Officers: TFO John Kosmowski, SA Kenneth Weidner | | | | |

10. Report Re: Debriefing of CS-01-105544 on October 29, 2002

### SYNOPSIS

On October 29, 2002, at approximately 2:20 p.m., SA Christopher Hoyt, SA Kenneth Weidner, and TFO John Kosmowski debriefed CS-01-105544, hereafter referred to as the CS. The CS provided information pertaining to Hafez HUSEIN and his pseudoephedrine trafficking organization. The following report is not all-inclusive, merely an outline of the information provided by the CS at the time of the interview.

### DRUG RELATED INFORMATION

1.    The CS stated that on October 28, 2002, at approximately 10:00 p.m., the CS was at the Paradise restaurant located at 111th and Harlem Avenue in Worth, Illinois. While there, FNU BASTI and ALI ABUSHUSHA approached the CS. BASTI and ABUSHUSHA sat with the CS for a few minutes. ABUSHUSHA then received a telephone call from Hafez HUSEIN.

| 11. Distribution: Division District Other    SARI | 12. Signature (Agent) SA Christopher L. Hoyt 14. Approved (Name and Title) GS Gary Jackson | 13. Date 10-30-02 15. Date 10-30-02 |
|---|---|---|

DEA Form    - 6
(Jul. 1996)
      clh
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-02-0261 | 2. G-DEP Identifier WAA7I |
|---|---|---|
| (Continuation) | 3. File Title JESSY | |

| 4. Page 2 of 4 | |
|---|---|
| 5. Program Code | 6. Date Prepared 10/30/02 |

2.  The CS stated HUSEIN and FNU JUDA arrived at the restaurant approximately one half hour later and joined the CS, ABUSHUSHA, and BASTI.  JUDA said he had heard the CS had called JESSY and JIMMY (Jamil ADAWI).  JUDA said the CS had told JESSY and ADAWI that the CS had received a subpoena.  HUSEIN then asked the CS why the CS had received a subpoena and he did not.  The CS told HUSEIN he/she did not know why.  The CS stated JUDA then said that on the day after HUSEIN's money was taken, he (JUDA) sat across the street from the Summit Police Station for one week watching everyone coming and going.  JUDA said Officer Kosmowski works at Summit and tries to get Arabs to work for the government.  The CS told JUDA and the others he/she did not know what JUDA was talking about.  The CS stated JUDA said ABED, SADAT and Aysha NASSAR are currently working for the DEA.  JUDA said Officer Kosmowski came to the CS and told the CS to testify or the CS would not receive a percentage.  JUDA said the percentage paid to people working for the DEA was seventeen percent and now is twenty-five percent.  The CS stated HUSEIN said the government hires people to work for them.  HUSEIN said he would find out who was working there (on the day the money was seized from him) and he guaranteed that person would get shot one day.  HUSEIN said he wished he could have a group that would find out who testifies so he could get rid of them.

3.  The CS stated JUDA asked ABUSHUSHA about the ISA brothers.  ABUSHUSHA said they got busted because they were greedy.  JUDA said he had heard cases of pseudoephedrine in California sell for between $2,000.00 and $2,500.00 per case.  HUSEIN asked who was the king of pseudo in Chicago so he could buy cases.  ABUSHUSHA said WAZ WAZ was the king.  JUDA asked the CS for WAZ WAZ's phone number.  The only number the CS had was the same number JUDA already had, 312-790-1819.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

4 - Extra

| REPORT OF INVESTIGATION | 1. File No. I1-02-0261 | 2. G-DEP Identifier WAA7I |
|---|---|---|
| *(Continuation)* | 3. File Title JESSY | |
| **4.** Page  3  of  4 | | |
| 5. Program Code | 6. Date Prepared 10/30/02 | |

4.  The CS stated HUSEIN talked about the day the money was taken from him. HUSEIN said he told the old man to put the money, which was in a tray, into the trunk. HUSEIN said JESSY took the rest of the money the police missed. HUSEIN said JESSY recently took $86,000.00 from somebody to whom he was supposed to sell 100 cases of pseudoephedrine.


## NON-DRUG RELATED INFORMATION

1.  The CS described HUSEIN as an Arab male in his early 40's, approximately 6'02", 180 pounds, brown hair and who was usually clean-. The CS stated HUSEIN has a store in the area of 57th and Ashland in Chicago, Illinois. The CS did not know where HUSEIN is presently living or which vehicles he may own or drive.

2.  The CS described BASTI as an Arab male in his mid twenties, approximately 6'01", 215 pounds, black hair, and a goatee. The CS stated BASTI owns a Citco Gas Station. The CS did not know where BASTI is presently living or which vehicles he may own or drive.

3.  The CS described ABUSHUSHA as an Arab male in his early thirties, approximately 6'00", 215 pounds, brown hair, and a goatee. The CS did not know where ABUSHUSHA is presently living or which vehicles he may own or drive.

4.  The CS described JUDA as an Arab male in his mid thirties, approximately 5'06", 250 pounds, and black hair. The stated JUDA usually drives a black SUV, possibly an Expedition.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

**4 - Extra**

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No. I1-02-0261 | 2. G-DEP Identifier WAA7I |
|---|---|---|
| *(Continuation)* | 3. File Title JESSY | |
| 4. Page  4  of  4 | | |
| 5. Program Code | 6. Date Prepared 10/30/02 | |

## FINANCIAL INFORMATION

The Cs did not provide any financial information at this time.

## TERRORIST INFORMATION

The CS did not provide any terrorist information at this time.

## INDEXING

1.  ABUSHUSHA, Ali – NADDIS #5137318.  Alias for SALEM, Ali Ragheb, Telephone Number 312-790-1819.

2.  ADAWI, Jamil – NADDIS #5396262.  Alias: Jimmy.

3.  BASTI, FNU – NADDIS Negative.  Arab Male, 25 yoa, 6'01", 215 lbs., black hair.

4.  HUSEIN, Hafez – NADDIS #5396176.

5.  JESSY – NADDIS Negative.

6.  JUDA, FNU – NADDIS Negative.  Arab Male, 35 yoa, 5'06", 250 lbs., black hair.

7.  WAZ WAZ – NADDIS #5137331.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**4 - Extra**

04CR237                                             00338

**REPORT OF INVESTIGATION**

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. I1-03-0003 | 4. G-DEP Identifier WAA7D |
|---|---|---|---|---|
| 5. By: SA Christopher L. Hoyt At: Chicago Field Division | ☒ CS-01-105544 ☒ I9-01-0064 ☐ ☐ ☐ | | 6. File Title YWAMMNI, Mustafa | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 11-08-2002 | |
| 9. Other Officers: TFO John Kosmowski | | | | |

10. Report Re: Debriefing of CS-01-105544 on November 7, 2002 Regarding Naim SHALASH Subsequently identified as Kamel Muhamud SHALASH and Acqustion of Exhibit N-9

## DRUG RELATED INFORMATION

1. On November 7, 2002, at approximately 9:50 a.m., SA Christopher Hoyt and TFO John Kosmowski debriefed CS-01-105544, hereafter referred to as the CS. The CS provided the following information pertaining to Naim SHALASH, subsequently identified as Kamel Muhamud SHALASH, and his pseudoephedrine trafficking organization. The following report is not all-inclusive, merely an outline of the information provided by the CS at the time of the interview.

2. The CS stated that on November 5, 2002, SHALASH called the CS and told the CS to avoid Mustafa YWAMMNI. SHALASH stated YWAMMNI has a big mouth and has been talking to Hussein WAZWAZ. SHALASH then told the CS that he would be in Los Angeles this weekend. SHALASH told the CS to make sure "everything was ready" with the CS' people. SHALASH told the CS to let him know if for any reason this deal was not going to happen. SHALASH told the CS they either do this deal or they will never do any deals. This call was recorded and is identified as Exhibit N-9.

3. This recorded conversation was made to confirm a prior agreement between the CS and SHALASH for the delivery of 200 cases of pseudoephedrine to SHALASH in California. SHALASH has indicated to the CS that he will give the CS $400,000.00 as payment for the 200 cases of pseudoephedrine. The CS will then have two hours to return with the pseudoephedrine.

| 11. Distribution: Division District Other SARI | 12. Signature (Agent) SA Christopher L. Hoyt | 13. Date 11-8-02 |
|---|---|---|
| | 14. Approved (Name and Title) GS Gary Jackson | 15. Date 11802 |

DEA Form - 6
(Jul. 1996)

clh
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| REPORT OF INVESTIGATION | 1. File No.<br>I1-03-0003 | 2. G-DEP Identifier<br>WAA7D |
|---|---|---|
| *(Continuation)* | 3. File Title<br>YWAMMNI, Mustafa | |
| 4.<br>Page  2  of  2 | | |
| 5. Program Code | 6. Date Prepared<br>11-08-2002 | |

## CUSTODY AND DESCRIPTION OF EVIDENCE

1.  Exhibit N-9 is described as one audiocassette tape containing a recorded conversation between the CS and SHALASH.  The recording was made on November 5, 2002.  SA Hoyt and TFO Kosmowski acquired the tape on November 7, 2002.  SA Hoyt maintained custody of Exhibit N-9 until transferred to the Chicago Field Division Non-Drug Evidence Custodian for safekeeping.

## NON-DRUG RELATED INFORMATION

1.  The CS did not provide any Non-Drug related information at this time.

## FINANCIAL INFORMATION

1.  The CS did not provide any financial information at this time.

## TERRORIST INFORMATION

1.  The CS did not provide any terrorist information at this time

## INDEXING

1.  SHALASH, Kamel Muhamud - NADDIS #5415320.  Alias: Naim SHALASH, NAIM, Arab Male, DOB: 04-01-64, 5'09", 176 lbs., Brown Hair, Brown Eyes, Address: 41 Carriage Station, Cincinnati, Ohio 45245, Ohio Driver's License Number: SJ692014, SSN: 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, Telephone: 513-753-3375, 513-262-5428.

2.  YWAMMNI, Mustafa - NADDIS Pending.

3.  WAZWAZ, Hussein - NADDIS #4990937, 5137331.

---

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

4 - Extra

Previous edition dated 8/94 may be used.

04CR237

00317

# REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No 11-02-0011 | 4. G-DEP Identifier YNASB |
|---|---|---|---|---|
| 5. By: James L. Jones  At: Chicago, IL | X  CS-1105544 | | 6. File Title ALNOUBANI, Osama | |
| 7. ☐ Closed  ☐ Requested Action Completed  Action Requested By: | | | 8. Date Prepared 12/18/02 | |
| 9. Other Officers: TFO John Kosmowski | | | | |
| 10. Report Re: December 15, 2002, Debriefing of CS01105544 | | | | |

## DRUG RELATED INFORMATION

1. On December 15, 2002, CS01105544 hereafter referred to as CS, relayed to SA Jones and TFO Kosmowski that Kharidin ALNOUBANI, Waleed ABDEL JABER, and Naim ABDEL JABER are trafficking illicit pseudoephedrine.

2. The CS told Agents that Waleed ABDEL JABBAR is a student at Northwestern University that drives pseudoephedrine proceeds to his dad (Naim ABDEL JABBAR) in Canada. The CS told SA Jones that Naim ABDEL JABBAR is a pseudoephedrine trafficker in Canada that is providing weekly shipments of pseudoephedrine to ALNOUBANI.

3. The CS told SA Jones that Naim ABDEL JABBAR and Khalid AL ARAB grew up together in Jordan and are friends. The CS believed that Khalid AL ARAB introduced Naim ABDEL JABBAR to ALNOUBANI. The CS told SA Jones that Naim ABDEL JABBAR is sending ALNOUBANI approximately 2 pallets of pseudoephedrine each week. The CS told SA Jones that pseudoephedrine is packaged in a 20,000 pill count plastic bag and five bags are contained within each box.

4. The CS told SA Jones that Waleed ABDEL JABBAR rents cars from Budget Rent a Car at Midway Airport in Chicago, the CS stated that Waleed ABDEL JABBAR will then put narcotics proceeds obtained from ALNOUBANI in the spare tire of the rental vehicle and drive the vehicle to Canada. The CS stated once in Canada Naim ABDEL JABBAR will have the US removed from the rental vehicle.

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division SARI | James L. Jones | 12/19/2002 |
| District | 14. Approved (Name and Title) Tim McCormick GRoup Supervisor | 15. Date 12/19-02 |
| Other | | |

DEA Form - 6
(Jul. 1996)
JLJ

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

...inistration

| REPORT OF INVESTIGATION | 1. File No. | 2 G-DEP Identifier |
|---|---|---|
| (Continuation) | I1-02-0000 | YNA5E |
| | 3 File Title ALOAWA MEP, Osama | |

| 2 of 2 | |
|---|---|
| gram Code | 6 Date Prepared 12/18/01 |

4. The CS told SA Jones that Khalid HOURANI who is a partner with ALNOUBANI also owns the Barber Shop next to the Ameer Restaurant.

5. The CS told SA Jones that Hafez HUSEIN and Shahin JUDEH are partners that are trafficking cocaine as well as pseudoephedrine. The CS told SA Jones that JUDEH and HUSEIN obtained there pseudoephedrine from a different source in Canada.

6. The CS gave SA Jones the following phone numbers for the Targets of this investigation; Waleed ABDEL JABBAR - Hm. 773-735-3939, Cellular: 773-301-5338; Naim ABDEL JABBAR - 416-261-6661; Khalid ABU ARAB -708-671-1080; Hafez Husein - 773-908-9292.

**NON DRUG RELATED INFORMATION**
None At This Time

**FINANCIAL INFORMATION**
None At This Time

**INDEXING**

1. HUSSEIN, Hafez - NADDIS# 5396176
2. JUDEH, Shahin - NADDIS# 4616378
3. ABDUL JABBAR, Walid - NADDIS# Pending
4. ABDUL JABBAR, Naim - NADDIS#-NEGATIVE, Address- Canada,Pn. 416-261-6661
5. ALNOUBANI, Kharidin - NADDIS# 5256968

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

# Exhibit D

This is a statement given by _Amin Jain_ to SA Christopher Hoyt, TFO John Kosmowski, GS Gary Jackson, and SA James Walsh at the Summit Police Department on October 15, 2002, at approximately 4:00 p.m.

On October 15, 2002, at approximately 3:30 p.m., I met Atef ISSA at Cub Foods on 10280 S. Harlem Avenue. Atef asked me if I was ready. I said yes and asked him if he was ready. Atef said to bring it to his store on Thursday morning. I asked him if he was sure. I asked him if he was crazy. Atef said it was the safest place to bring it to the back door of his store. He said nobody would know what we were doing.

Atef told me to make sure it was the good stuff. He said he knew there was a lot of bad stuff out there. I told him I guaranteed my stuff. I told him when he takes it to California to the cook I guaranteed it. I told him if it were bad I would take it back. He said he just wanted to make sure it was good so he wasn't embarrassed. I told him I guaranteed it that it was not like the stuff he gave to Kentucky. My cell phone rang while I was meeting with Atef, it was Yemeni. I told Atef he was looking to buy 300 cases from me. Atef said he trusted me and when they take it there they will find out if it is good. He then told me the deal was for $140,000.00. I said no it was for $150,000.00. He kept asking me so I agreed to sell him 200 cases of pseudoephedrine for $140,000.00. Atef told me to come to his store Thursday morning. I asked him again why not do the deal for $150,000.00. He again said to make it $140,000.00 and to come to his shop.

I have read the foregoing statement consisting of 1 page and have initialed each page as well as all of my corrections. This statement is true and correct to the best of my knowledge and belief. I have given this statement freely and voluntarily without threats, coercion, or promises.

SA Christopher Hoyt typed this statement.

_[signature]_     10-15-02
Signature and Date

Witness: _[signature]_ SA Christopher L. Hoyt
Witness: _[signature]_
Witness: _[signature]_
Witness: _[signature]_ SA

# Exhibit E

1    ~~On December 15th, 2003, was Mr. Jumah an active CI -- or~~
2    ~~CI?~~

3    A   ~~I believe so.~~

4    Q   Is there a sign-up agreement that reflects that somewhere?

5    A   I would not review the -- I was not his handler, so I

6    would not review the CI agreement.

7    Q   ~~But you were clearly debriefing him in his capacity as a~~
8    ~~CI on December 15th, 2003?~~

9    A   ~~Correct.~~

10   Q   I need to ask you a little bit more about Northern Star,

11   and I'm only going to use first names.

12   A   Okay.

13   Q   And no last names.

14   A   Okay.

15   Q   But if that's not enough information for you, we'll try to

16   work something out here.

17          In addition to the debriefing that you did of

18   ~~Mr. Jumah on December 15th, 2003~~, isn't it also true that he

19   was interviewed or debriefed in the Northern Star

20   ~~investigation on October 16th, 2003?~~

21   A   ~~I don't know.~~

22   Q   Are you aware -- how about this.  Tell me the first name

23   of the person who was being wiretapped, no last names.

24   A   At which point in time?  There were several wiretaps.

25   Q   Well, the one that you're claiming Mr. Jumah supplied

Jones - cross by Shat●

1  information about that you had obtained through other methods.

2  A̶n̶s̶w̶e̶r̶ ̶K̶h̶a̶r̶ ̶H̶U̶H̶H̶?̶

3  Q   Kharidin?

4  A̶N̶S̶W̶E̶R̶ ̶Y̶e̶s̶?̶

5  Q   Is that what you said?

6  A   Yes.

7  Q̶u̶e̶s̶ ̶C̶o̶u̶l̶d̶ ̶y̶o̶u̶ ̶s̶p̶e̶l̶l̶ ̶t̶h̶a̶t̶ for me?

8  A̶n̶s̶w̶e̶r̶ ̶K̶-̶H̶-̶A̶-̶R̶-̶I̶-̶D̶-̶I̶-̶N̶.̶

9  Q   Am I correct in saying that there were other individuals

10  from Chicago and Kentucky that were targeted in this

11  investigation?

12  A   Kentucky?

13  Q   Yes.

14  A   Yes.

15  Q̶u̶e̶s̶ ̶O̶k̶a̶y̶.̶ ̶ ̶A̶n̶d̶ ̶w̶o̶u̶l̶d̶ the first name of one of the individuals

16  w̶h̶o̶ ̶I̶ ̶b̶e̶l̶i̶e̶v̶e̶ is from Chicago be Atef, A-T-E-F?

17        THE COURT:  Let me see you at side bar.

18        MS. BROWN:  Objection to relevance.

19        THE COURT:  Hold it.  Strike that from the record.

20        (Side bar conference.)

21        THE COURT:  Where are you going with this?

22        M̶S̶.̶ ̶S̶H̶A̶T̶Z̶:̶  ̶T̶h̶e̶ ̶a̶g̶e̶n̶t̶ ̶h̶a̶s̶ ̶n̶o̶w̶ ̶t̶e̶s̶t̶i̶f̶i̶e̶d̶ --

23        THE COURT:  Where are you -- there's an objection.  I

24  just struck that answer from the record.  Where are you going

25  with this?

Jones - cross by Shat

1   shipments of pseudoephedrine to a third individual?

2   A    That's the information I was given.

3   Q    In addition -- Mr. Jumah also supplied you with further

4   information pertaining to this investigation, and some of

5   those additional things were also that how the pseudoephedrine

6   was packaged when it was shipped; is that correct?  Paragraph

7   three?

8   A    Yes.

9   Q    And where the cars were rented from that were driven up to

10  Canada; is that correct?  Paragraph four?

11  A    Yes.

12  Q    And how the proceeds from the pseudoephedrine were

13  secreted within the rental car?

14  A    Yes.

15  Q    And Mr. Jumah also gave you information about a business

16  that one of those individuals owned?  Continuation of

17  paragraph four it looks like, second page?

18  A    Yes.

19  Q    And he told you about the business relationship of certain

20  pseudoephedrine dealers to one another; is that correct?

21  A    Yes.

22  Q    Additionally, Mr. Jumah supplied you with phone numbers

23  for four different individuals that were being investigated;

24  is that correct?

25  A    He gave me the information, but just because he mentioned

1   information I had received from Mr. Jumah it did not warrant

2   paying him based upon the fact that we -- at the point when I

3   met Mr. Jumah, Operation Northern Star was ending.

4   Q   And that was when, again, when you met him?

5   A   December 2003.  I mean 2002, 2002.  It was ending, so that

6   was my position.

7   Q   Okay.  And just so we're clear, you are not aware of

8   Mr. Jumah's participation in October and November or

9   September, October, November regarding the Northern Star

10  investigation?

11  A   Right.  Just because he's providing information doesn't

12  mean it was geared toward Operation Northern Star.

13  Q   And just without any names, as an upshot of Northern Star

14  there were numerous people that were arrested; is that

15  correct?

16  A   Correct.

17  Q   And a great many assets that were seized?

18  A   Some.

19  Q   A great deal?

20  A   Yes.

21  Q   Millions of dollars?

22  A   Yes.

23          MS. SHATZ:  Nothing further.  Thank you.

24          THE COURT:  Redirect, Miss Brown.

25          MS. BROWN:  Yes, Your Honor.



U. S. Department of Justice
Drug Enforcement Administration

**VOUCHER FOR PURCHASE OF EVIDENCE
OR PAYMENT TO CONFIDENTIAL SOURCE**

## I. CLAIMANT

| 1 CLAIMANT (Type of Print Name) | 2. DATE OAF RECEIVED | 3. SOCIAL SECURITY NO. |
|---|---|---|
| James R. Loring | 1/13/03 | 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 |

| 4 OFFICE | 5. GROUP NO. | 6 CASE NO | 7 G-DEP |
|---|---|---|---|
| Chicago FD | 21 | T1-02-0232 | ZMA76 |

## II. PURCHASE OF EVIDENCE (PE)

I certify that I received Official Advance Funds (OAF), in U.S. dollars or the equivalent amount of another currency, in the amount as herein indicated, to purchase evidence or to be expended strictly in compliance with oral instructions.

| 8. AMOUNT RECEIVED: | | **Dollars** | $ |
|---|---|---|---|

| 9. PURCHASER (Signature) ((CS Sign GREEN Copy ONLY)) | Type or Print Name (CS, green copy ONLY) | Title or CS Number |
|---|---|---|
| | | Date |

| 10. TRANSFEREE (Signature) | Type or Print Name | Date |
|---|---|---|

| 11. WITNESS (Signature) | Type or Print Name | Date |
|---|---|---|

| 12. AMOUNT RETURNED | Claimant's Initials & Date | 13. EXHIBIT NO. and DESCRIPTION OF EXHIBIT | 14. NET AMOUNT EXPENDED: |
|---|---|---|---|
| $ | | | $ |

## III. PAYMENT TO CONFIDENTIAL SOURCE (PI)

| 15. PURPOSE (check one) | ☐ Information/Services    ☐ Reimbursement Expenses    ☐ Reward    ☐ Award 28 USC 524 (C) (1) (C) |
|---|---|
| | ☐ Trafficker Directed/Generated Proceeds    ☐ Security    ☐ Relocation    ☐ Award 28 USC 524 (C) (1) (B) |

| 16. PAYMENT (check one) | ☐ Cash    ☐ Check    ☐ Electronic funds transfer    ☐ Payment to a third party at the request of a CS    ☐ On behalf of CS |
|---|---|

17. REMARKS

I acknowledge that all payments are wholly discretionary, and that this payment cannot be construed as a confirmation of any express or implied promise to pay me any amount. I certify that I received payment in U.S. currency or the equivalent amount of another currency or equivalent barter in the amount and for the basis indicated. I acknowledge that all payments I receive as indicated in this section, that qualify as taxable income, must be reported on appropriate income tax returns and that it is my responsibility to maintain receipts and documentation to support claims for offsetting expenses.

| 18 CONFIDENTIAL SOURCE (Signature, GREEN Copy ONLY) | Type or Print Name (GREEN Copy ONLY) | CS Number C801105144 | 19. AMOUNT RECEIVED |
|---|---|---|---|
| _Abdu Ju_ | _Abdu Juma_ | Date 1/14/03 | $ 100.00 |

| 20. PAYER (Signature) | Type or Print Name SA James R. Loring | Date |
|---|---|---|

| 21. WITNESS (Signature) | Type or Print Name TFA John Kosmowski | Date |
|---|---|---|

## IV. CERTIFICATION

| 22. CLAIMANT (Signature) | Type or Print Name SA James R. Loring | Date |
|---|---|---|

| 23. SUPERVISOR (Signature) | Type or Print Name GS Tim McCormick | Date |
|---|---|---|

## V. ACCOUNTING CLASSIFICATION

| FUND CITATION (To include obligation documentation number and budget object class) | AMOUNT |
|---|---|
| | $ |

DEA Form
(Sept. 1999) - **103**

Previous editions are Obsolete

# Exhibit

# G

U.S. Department of Justice
Drug Enforcement Administration

**VOUCHER FOR PURCHASE OF EVIDENCE OR PAYMENT TO CONFIDENTIAL SOURCE**

## I. CLAIMANT

| 1. CLAIMANT (Type or Print Name) | 2. DATE CAF RECEIVED | 3. SOCIAL SECURITY NO. |
|---|---|---|
| John Kozmowski | | |

| 4. OFFICE | 5. GROUP NO | 6. CASE NO | 7. G-DEP |
|---|---|---|---|
| Chicago D.O. | 35 | | |

## II. PURCHASE OF EVIDENCE (PE)

I certify that I received Official Advance Funds (OAF), in U.S. dollars or the equivalent amount of another currency, in the amount as herein indicated, to purchase evidence or to be expended strictly in compliance with oral instructions.

| 8. AMOUNT RECEIVED: | N/A | **Dollars** | $ |
|---|---|---|---|

| 9. PURCHASER (Signature) ((CS Sign GREEN Copy ONLY)) | Type or Print Name (CS, green copy ONLY) | Title or CS Number |
|---|---|---|
| | | Date |

| 10. TRANSFEREE (Signature) | Type or Print Name | Date |
|---|---|---|

| 11. WITNESS (Signature) | Type or Print Name | Date |
|---|---|---|

| 12. AMOUNT RETURNED | Claimant's Initials & Date | 13. EXHIBIT NO. and DESCRIPTION OF EXHIBIT | 14. NET AMOUNT EXPENDED: |
|---|---|---|---|
| $ | | | $ |

## III. PAYMENT TO CONFIDENTIAL SOURCE (PI)

| 15. PURPOSE (check one) | ☒ Information/Services | ☐ Reimbursement Expenses | ☐ Reward | ☐ Award 28 USC 524 (C) (1) (C) |
|---|---|---|---|---|
| | ☐ Trafficker Directed/Generated Proceeds | | ☐ Security | ☐ Relocation | ☐ Award 28 USC 524 (C) (1) (B) |

| 16. PAYMENT (check one) | ☒ Cash | ☐ Check | ☐ Electronic funds transfer | ☐ Payment to a third party at the request of a CS | ☐ On behalf of CS |
|---|---|---|---|---|---|

17. REMARKS CS-SN #5571  Payment Made with Information
Provided for Investigation Purposes

I acknowledge that all payments are wholly discretionary, and that this payment cannot be construed as a confirmation of any express or implied promise to pay me any amount. I certify that I received payment in U.S. currency or the equivalent amount of another currency or equivalent barter in the amount and for the basis indicated. I acknowledge that all payments I receive as indicated in this section, that qualify as taxable income, must be reported on appropriate income tax returns and that it is my responsibility to maintain receipts and documentation to support claims for offsetting expenses.

| 18. CONFIDENTIAL SOURCE (Signature, GREEN Copy ONLY) | Type or Print Name (GREEN Copy ONLY) | CS Number | 19. AMOUNT RECEIVED |
|---|---|---|---|
| | Amir Toma | Date 5-23-2 | $ 1,000.00 |

| 20. PAYER (Signature) | Type or Print Name | Date |
|---|---|---|
| | TFA John Kozmowski | 5-23-02 |

| 21. WITNESS (Signature) | Type or Print Name | Date |
|---|---|---|
| | SA CHRISTOPHER L. HOYT | 5-25-02 |

## IV. CERTIFICATION

| 22. CLAIMANT (Signature) | Type or Print Name | Date |
|---|---|---|
| | TFA John Kozmowski | 5-23-02 |

| 23. SUPERVISOR (Signature) | Type or Print Name | Date |
|---|---|---|
| | | |

## V. ACCOUNTING CLASSIFICATION

| FUND CITATION (To include obligation documentation number and budget object class) | AMOUNT |
|---|---|
| | $ |

DEA Form
(Sept. 1999) - **103**   Previous editions are Obsolete

```
RTTUZYUW RUEABND4689 0762252-UUUU--RUEASUU.
ZNR UUUUU
R 1721472 MAR 03
FM DEA HQS WASHINGTON DC
TO ZEN/DEA CHICAGO FIELD DIVISION//SAC
INFO DEA HQS WASHINGTON DC
BT
UNCLAS  DEA 04689
```

```
                                        RECEIVED
                                        CRYPTO ROOM

                                   2003 MAR 17  P 10: 34
```

ATTN        S/A GARY A. JACKSON/CHICAGO FDO

SUBJ        AWARD PAYMENT FROM ASSET FORFEITURE FUND
REF         DEA FORM 499 DATED 6/24/02 FROM MICHAEL DEMARTE,
            FORMER SAC TO DO
            (FFS:  130-06.2)

1.  THE AWARD PAYMENT FOR CONFIDENTIAL SOURCE (CS) CS01105544
FROM THE ASSET FORFEITURE FUND CONCERNING DEA CASE NO. I1-02-0261
HAS BEEN APPROVED IN THE AMOUNT OF $29,800.00.

2.  YOU ARE AUTHORIZED TO MAKE THIS (C)1(C) AWARD PAYMENT USING
THE FOLLOWING FFS ACCOUNTING CLASSIFICATION: 03A-2510000-DALFR1C-
5610000-2579/DOCUMENT NO. OM3A5900093.

3.  FORFEITURE FUND AWARD PAYMENTS MUST BE DOCUMENTED BY THE
COMPLETION OF A DEA FORM 103.  THE SIGNED COPY WILL BE RETAINED
IN THE CS FILE.  ALL PAYMENTS TO CS'S MUST BE POSTED TO THE DEA FORM
356, CS PAYMENT RECORD.

4.  AWARD CLAIMANTS MUST BE ADVISED OF THEIR INCOME TAX
LIABLILITY. THE FISCAL COPY OF THE DEA FORM 103 MUST BE FORWARDED
TO DIANNA HARRISON, OMBB, BY THE PAYOR UPON PAYMENT.

5.  IF NECESSARY, THE CAP WILL BE RAISED BY OM.

6.  ANY QUESTIONS MAY BE DIRECTED TO JERRY HEARD, OMB, ON
202-307-4218.


WILLIAM SIMPSON, JR.
CHIEF OF OPERATIONS MANAGEMENT
CC:  FNOC, DOA
BT

UNCLASSIFIED
```

*Read instructions on
Reverse before completing*



U.S. DEPARTMENT OF JUSTICE · DRUG ENFORCEMENT ADMINISTRATION

# VOUCHER FOR PURCHASE OF EVIDENCE OR PAYMENT TO CONFIDENTIAL SOURCE

## I. CLAIMANT

| 1. CLAIMANT *(Type or Print Name)* | 2. DATE OAF RECEIVED | 3. SOCIAL SECURITY NO. |
|---|---|---|
| | | |

| 4. OFFICE | 5. GROUP NO. | 6. CASE NO. | 7. G DEP |
|---|---|---|---|
| | 32 | Il-02-0261 | CART I |

## II. PURCHASE OF EVIDENCE (PE)

I certify that I received Official Advance Funds (OAF), in U.S. dollars or the equivalent amount of another currency, in the amount as herein indicated, to purchase evidence or to be expended strictly in compliance with oral instructions.

8. AMOUNT RECEIVED

Twenty one thousand dollars **Dollars** ————————— $21,900.00

| 9. PURCHASER *(Signature)* (CS Sign **GREEN** Copy **ONLY** | TYPE OR PRINT NAME (CS, green copy ONLY) | TITLE OR CS NUMBER | DATE |
|---|---|---|---|
| | | | |

| 10. TRANSFEREE *(Signature)* | TYPE OR PRINT NAME | DATE |
|---|---|---|
| | | |

| 11. WITNESS *(Signature)* | TYPE OR PRINT NAME | DATE |
|---|---|---|
| | | |

| 12. AMOUNT RETURNED $ | CLAIMANT'S INITIALS & DATE | 13. EXHIBIT NO. AND DESCRIPTION OF EXHIBIT | 14. NET AMOUNT EXPENDED $ |
|---|---|---|---|
| | | | |

## III. PAYMENT TO CONFIDENTIAL SOURCE (PI)

15. PURPOSE *(check one)*
☐ Information/Services ☐ Reimbursement Expenses ☐ Reward ☐ Award 28 USC 524 (C) (1) (C)
☐ Trafficker Directed/Generated Proceeds ☐ Security ☐ Relocation ☒ Award 28 USC 524 (C) (1) (B)

16. PAYMENT *(check one)*
☒ Cash ☐ Check ☐ Electronic funds transfer ☐ Payment to a third party at the request of a CS ☐ On behalf of CS

17. REMARKS

Award payment to CS-01-105544 for case Il-02-0261, per DI teletype dated March 17, 2003.

I acknowledge that all payments are wholly discretionary, and that this payment cannot be construed as a confirmation of any express or implied promise to pay me any amount. I certify that I received payment in U.S. currency or the equivalent amount of another currency or equivalent barter in the amount and for the basis indicated. I acknowledge that all payments I receive as indicated in this section, that qualify as taxable income, must be reported on appropriate income tax returns and that it is my responsibility to maintain receipts and documentation to support claims for offsetting expenses.

| 18. CONFIDENTIAL SOURCE *(Signature, **GREEN** Copy ONLY* | TYPE OR PRINT NAME [GREEN Copy **ONLY**] | CS NUMBER CS-01-105544 DATE 3-27-03 | 19. AMOUNT RECEIVED $21,900.00 |
|---|---|---|---|

| 20. PAYER *(Signature)* | TYPE OR PRINT NAME | DATE 3-27-03 |
|---|---|---|

| 21. WITNESS *(Signature)* | TYPE OR PRINT NAME | DATE 3-27-03 |
|---|---|---|

## IV. CERTIFICATION

| 22. CLAIMANT *(Signature)* | TYPE OR PRINT NAME | DATE 3-27-03 |
|---|---|---|

| 23. SUPERVISOR *(Signature)* | TYPE OR PRINT NAME CSN | DATE 3-27-03 |
|---|---|---|

## V. ACCOUNTING CLASSIFICATION

| FUND CITATION *(To include obligation documentation number and budget object class)* | AMOUNT $ |
|---|---|

**FORM DEA-103** (9-99) *Previous editions obsolete*
Electronic Form Version Designed in JetForm 5.2 Version

**ESTABLISHING OFFICE CONFIDENTIAL SOURCE FILE**





**U. S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| Terra L. Brown<br>*Assistant United States Attorney* | *Dirksen Federal Building<br>219 South Dearborn Street, Fifth Floor<br>Chicago, Illinois 60604* | *Direct Line: (312) 353-3148<br>Fax: (312) 353-4322* |

January 13, 2006

**VIA FAX**
Susan Shatz, Esq.
407 S. Dearborn Street, Suite 1735
Chicago, IL 60605
FAX: (312) 697-0812

Re:   <u>United States v. Amin Jumah</u>, 04 CR 237

Dear Ms. Shatz:

In preparation for trial, AUSA Angela Crawford and I met with DEA Special Agent James Jones. Special Agent Jones informed us that in 2003, your client called him four to five times requesting payment for information he had provided while working as a CI in 2001 or 2002. Special Agent Jones also said that your client traveled to the DEA Chicago Field Office on several occasions in 2003 to request that Special Agent Jones arrange that he be paid for information he had provided while working as a CI in 2001 or 2002. Special Agent Jones never paid your client for that information since it was duplicative of information Special Agent Jones had already obtained.

Please do not hesitate to contact me should you have any questions.

Very truly yours,
PATRICK J. FITZGERALD
United States Attorney

By: _____
TERRA L. BROWN
Assistant United States Attorney
219 S. Dearborn, 5th Floor
Chicago, Illinois 60604
(312) 353-3148

Exb H



# Exhibit

# I

RE:   NORTHERN STAR OPERATIN  CASSE

I AMIN JUMA I BEN WORKING WITH  THE F.B.I FOR THE PAST  11
YEARS AS (INFORMENT)
WITH AGENT , JOHN DIWICK HE IS THE PERSON  INTRODUSE ME TO
THE D,E,A AGENTS,
I WORKED WITH ( KEETH LIND) FOR SOME  TIME ON ( MOUNTAIN
EXPRESS -I-II AND III WIT, HJOHN KASMOUSKI GROUP 32 AND D,E,A
CALIFORNIA WITH( BRADLEY GROUP OF 13 AGENTS EVERY TIME
I WORKED WITH A GROUP I GOT PAID AFTER THE ARREST AND
CASH WAS SEIZED,
I HELP  CALIFORNIA D,E,A WITH 3 OPERATIONS   (1) MOUNTAIN
EXPRESS OPERATION,
AND (2) MAALI OPERATION CASH WAS SEIZED AND(3) RIVERSIDE
OPERATION DRUGS BUST AND
CASH WAS OVER 800.000.00 DOLLARS(4) HAFEZ HUSSEN OPERATION
CASH WAS SEIZED
THE AMOUNT OF 197.000.00 DOLLARS I NEVER GAVE STATMENT TO
THE D,E,A JUST TO
MAKE A STORY . I WORK HARD WITH AGENTS TO MAKE THE
ARREST AND SEIZED THE DRUGS
AND CASH, NORTHERN STAR OPERATION  WAS"NT EASY I GEVE (JIM
, LOREIN) INFORMATION
ON A DAILY BASSIS THEN I MET ( JAMES JONES) J&J IN  SUMMIT
POLICE DEPARTMENT
WAS INTRUDOST TO ME BY D,E,A AGENT( KASMOUSKI) KASMO
ASK ME TO GEVE  J&J
AND (JIM) ALL THE INFO I HAVE ON  NORTHERN STAR TEAM AND
THEY SAID TO ME STARTS FROM TODAY TO WORK WITH J&J AND
JIM ON THIS CASS AND HELP GATHER INFORMATION
AND YOU GET PAID THE SAME WAY YOU WORK WITH OUR GROUP
(32) JIM GAVE ME 100.00
U.S DOLLARS FOR EXPENSES AND ASK ME TO REPORT EVERY
INFO I GATHER TO HIM
I STARTED TO CALL JIM FOR ALL THER MOVMENTS ,I USED TO
SET IN MY CAR FOR HOUERS
IN FRONT OF THE RESTURANT 111&HARLEM FALOW KAIRDIN
ALNOUBANI  LATE AT NIGHT TO SE
WHAT HE IS DOING AND WERE HE IS GOING I SET W KHALED
ABO ARAB IN HIS RESTURANT
FOR A LONG TIME JUST TO GET INFO ON EVERY BODY DEALING
WITH PSEUDO IN CONECTION
WITH KHALED AND ALNUBANI GROUP AND I DID  PROVIDE NAMES
AND PHONE NUMBERS LICENSE
PLATES AND MAKE OF CARS THEY DROVE NAMES AS FOLOW
,EZZAT KHLIL, NASER BASTE,
HAFEZ HUSSEN,KHALED ABO ARAB,MIZYED,JAMEEL ADAWE,HUSSEN

WAZWAZ,MUSTAFA YAMANI,WALEED WAZWAZ, WALEED SHLASH,
KHALED ABO ARAB, KAIRDEN ALNUBANI,WALEED ABD ALNABI,NASSER
GRAIEB, AND NAIEM ABD ALNABI FROM CANADA NAIEM HE IS THE
CONECTIONS BETWEN KHALED ABO ARAB AND ALNOUBANI NAIEM I
SPOKE TO NAIEM EVERY WEEK TO TRY GET THIS MAN TO COME
AND MEET ME IN CHICAGO HE ASK ME TO GO TO CANADA AND
MEET HIM , HE TOLD ME HE IS THE ONLY PERSON GOT THE
CONICTIONS WITH
THE PSEUDO COMPANIES AND I MET HIS SON TO MANY TIMES
HERE IN CHICAGO HIS SON
WALEED ABD ALNABI, I RECORDET SOM PHONE COVERSATIONS,I GOT
WIERED SOME TIMES,
I WENT WITH D,E,A AGENT JIM TO KHALED RESTURANT AND I
HAVE THE RECORDER ON
ME, I REPORT TO JIM EVERY MOVMENTS EVERY MEETING ,I MET
EZATT KHALIL AND KAIRDIN
AT JULIANA RESTURANT IN THE NORTH SIDE AND I TOLD HIM THE
WAY THE WERE SPENDING
MONEY ON TIPS AND THROWING CASH IN THE AIR FOR THE BALEY
DANCERS,
I GEVE JIM INFO ON KHALED MOVMENTS , I GEVE JIM INFO ON
HAFEZ HUSSEN AND HIS
STORE ACTIVITY, WE TRY TO GET ATEF ISSA TO BUY SOME
PSEUDO FROM ME,I GEVE INFO ON
HOW THEY SMUGEL THE PSEUDO IN CANDY BOXES AND IN THE
BACK OF S,U,V TRUCKS,
AND HOW THE START EMPTING THE BOTTILS OF PSEUDO IN TO
A PLASTIC BAGS LOOS,
THIS THE WAY NAIEM ABD ALNABI FROM CANADA TOLD ME IF I
WANT A SHIPMENT I WILL
PAK THE DRUG 25000 BELLS IN 1 PLSTIC BAG AND PAK 4 BAGS
IN ON CANDY BOX AND MIX
THEM IN SHIPMENT OF CANDY, I ASK JIM AND KASMOUSKI IF
THERE IS AWAY TO TRAVEL TO
CANADA AND MEET WITH NAIEM ABD ALNABI , THEY ASK ME TO
TRY AND MEET WITH HIM
IN DETROIT IN THE PAST I ASK NAIEM TO COME TO CHICAGO AND
MEET ME HE SAID TO
ME I CANT I AM HOT AND THE D.E,A WILL GET ME BECUSE HE
USED TO DEAL WITH
THE MOUNTAIN EXPRESS GROUP AND HE TOLD ME HIS SON IN
CHICAGO AND IF I WANT
TO MEET HIS SON, HE GAVE MA HIS SON PHONE NUMBER AND I
MET WITH HIS SON IN
HIS APARTMENT ,HIS SON TOLD ME HE WILL ARANGE THE
SHIPMENT IF I WANT TO BUY
PILLS , I REPORT ALL THIS MOVMENTS TO JIM , I BEN ASKED BY
J&J TO WRITE A REPORT ON



NORTHERN STAR OPERATIN THIS IS THE FIRST TIME I AM HAVING
DEFECULTY OF GETING PAID
ON A CASSE I WORKED WITH D,E,A OR ANY AGENCY.
I AM A HARD WORKING INDIVIDUAL WHO STRIVES TO IMPROVE HIS
POSITION IN LIFE.
I EARNED MY TRUST AND SUCCESSFULL RELATIONSHIP WITH D,E,A
/CUSTEM/C,S/F,B,I
FOR MANY YEARS , AND I WILL BE READY TO HELP ANY AGENCY
TO BUST AND ARREST
ANY DRUGS DEALING OR WRONG DOING FOR THE REST OF MY
LIFE,
I HAVE FAMILY WITH 3 KIDS AND I AM AGENST ANY PERSON
HOW MAKES IT EASY FOR
KIDS TO GET HOLD OF ANY SUBSTANCE TO USE.


I AM INCLUDING A COPY OF A TAPE THE LAST CONVERSATION
WITH D,E,A AGENT JIM LORIN
CONFERMING MY ASSISTANCE AND COMMISION ON  NORTHERN
STAR OPERATION DATED
   APRIL/17/2003 ,( AMIN ) YES CAN YOU HERE ME (JIM) I CAN HERE
YOU(AMIN) OK NOW IS BUTER
 (JIM) OK(AMIN)SO I TALKE TO KASMO HE ASK ME TO CALL JIMY HE
IS NOT GOING TO FORGET ABOUT YOU(JIM) NO DONT WORY I TAKE
CARE OF YOU  MAN  JUST WE DONT KNOW MUTCH
WE HAVE YET ITS GOING TO BE LETIL A WILE(AMIN)OK (JIM) I AM
NOT GOING TO FOR GET YOU
O WRITE,(AMIN) I GET MY PRESINTAGE(JIM) YES YOU
GETPRESINTSGE YES I WILL GEVE YOU A CALL TWOMORROW
(AMIN)DONT FORGET ME(JIM)I WON"T BROTHER(AMIN)THANK YOU
JIM(JIM)ALL
RITE ,ALL RITE



THANK YOU        01/09/2004
AMIN   JUMA
(708)705-8982






## Cellular Telephone Number Summary (continued)
### AMIN ABD-JUMA

708-705-8982

| | CHARGES | TOTAL |
|---|---|---|
| **Roaming Charges** | | |
| Surcharges | 0.00 | |
| Airtime Charges | 0.00 | |
| Toll Charges | 0.00 | |
| Int'l Roam Taxes | 0.00 | |
| **Total Roaming Charges** | | 0.00 |

**Toll Usage**
49.99 PROMO PLAN   18 Calls. 1/02/04 through 2/01/04

| **Domestic Usage** | | | | |
|---|---|---|---|---|
| BILLED Peak | 61.30 min X | 0.07 per min | 4.27 | |
| BILLED Off Peak | 21.30 min X | 0.07 per min | 1.47 | |
| Total minutes | 82.30 | | | |
| **International Usage** | | | | |
| INCLUDED MINUTES | 0.00 min | | 0.00 | |
| BILLED MINUTES | 16.00 min | | 8.00 | |
| Total minutes | 16.00 | | | |
| **Total 49.99 PROMO PLAN** | | | 13.74 | |
| **Total Toll Usage** | | | | 13.74 |

| **Other Charges & Credits** | | |
|---|---|---|
| Fed. and Other Regulatory Fees | 0.55 | |
| Federal USF Charge | 1.61 | |
| IL Wireless E-911 Fee | 0.75 | |
| **Total Other Charges & Credits** | | 2.91 |

| **Taxes** | | |
|---|---|---|
| Federal Excise Tax | 2.03 | |
| IL Telecom Excise Tax | 8.07 | |
| **Total Taxes** | | 10.10 |

**CURRENT CHARGES FOR 708-705-8982** — $78.09

## Detail of Extended Home Service Area Charges - 49.99 PROMO PLAN
### AMIN ABD-JUMA

708-705-8982

| Line | Date | Time | Calls To | Number Called | Period | Min | Airtime Charge | Toll Charge | Add'l Charge | Int'l Roam Taxes | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CHICAGO IL - A (00001) | | | | | | | | | | | |
| 1 | 12/30 | 4:39PM | LA GRANGE | IL  708-705-8982 | PK | 1.00 | 0.00 | | | 0.00 | 0.00 |
| | | | | | | | | Subtotal | | | $0.00 |
| **Total Extended Home Service Area Charges** | | | | | | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

PK=Peak    OP=Off Peak

## Detail of Toll Usage - 49.99 PROMO PLAN
### AMIN ABD-JUMA

708-705-8982

| Line | Date | Time | Calls To | Number Called | Feature | Period | Min | Airtime Charge | Toll Charge | Add'l Charge | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1/02 | 10:45AM | BKLYN NYC | NY  347-885-2594 | | PK | 6.00 | | 0.42 | | 0.42 |
| 2 | 1/02 | 7:12PM | NEWARK | NJ  973-926-2177 | | PK | 2.00 | | 0.14 | | 0.14 |
| 3 | 1/02 | 7:17PM | BKLYN NYC | NY  917-803-1133 | | PK | 9.00 | | 0.63 | | 0.63 |
| 4 | 1/05 | 10:06PM | BKLYN NYC | NY  347-885-2594 | | OP | 1.00 | | 0.07 | | 0.07 |
| 5 | 1/07 | 9:29PM | BKLYN NYC | NY  347-885-2594 | | OP | 1.00 | | 0.07 | | 0.07 |
| 6 | 1/09 | 8:19PM | TORONTO | ON  416-261-6661 | | PK | 1.00 | | 0.07 | | 0.07 |
| 7 | 1/12 | 10:17PM | ESCONDIDO | CA  760-443-4744 | | OP | 1.00 | | 0.07 | | 0.07 |





James Jones        312-886-2627

| Date | Time | Duration | Bates |
|------|------|----------|-------|
| 2.10.04 | 12:38 pm | 1.0 | 269 |
| 1.29.04 | 10:46 am | 1.0 | 262 |
| | 8:55 am | 1.0 | 262 |
| | 2:48 pm | 1.0 | 262 |
| 1.28.04 | 3:55 pm | 1.0 | 261 |
| | 11:35 am | 1.0 | 261 |
| | 8:31 am | 1.0 | 261 |
| 1.27.04 | 9:16 am | 1.0 | 261 |
| 1.26.04 | 5:06 pm | 1.0 | 261 |
| | 10:01 am | 1.0 | 261 |
| 1.23.04 | 4:30 pm | 2.0 | 260 |
| 1.22.04 | 12:49 pm | 1.0 | 259 |
| 1.21.04 | 12:36 pm | 15.0 | 259 |
| 1.13.04 | 11:14 am | 1.0 | 256 |
| | 11:03 am | 1.0 | 256 |
| | 10:46 am | 1.0 | 256 |
| | 10:13 am | 1.0 | 256 |
| | 9:51 am | 2.0 | 256 |
| 1.12.04 | 5:11 pm | 3.0 | 256 |

| 1.9.04 | 2:52 pm | 1.0 | 255 |
| | 2:47 pm | 1.0 | 255 |
| 1.8.04 | 2:14 pm | 2.0 | 254 |
| 1.5.04 | 4:40 pm | 1.0 | 253 |
| 12.30.03 | 5:49 pm | 1.0 | 246 |
| 12.10.03 | 5:16 pm | 1.0 | 242 |
| | 9:19 am | 1.0 | 242 |
| 12.9.03 | 7:15 pm | 1.0 | 242 |
| | 4:33 pm | 1.0 | 242 |
| | 3:20 pm | 1.0 | 242 |
| | 12:27 pm | 1.0 | 242 |
| | 9:08 am | 1.0 | 241 |
| 12.8.03 | 3:53 pm | 1.0 | 241 |

John Diwick       312-986-6533/312-907-9823      Calls From and To Jumah

| Date | Time | Duration |
|------|------|----------|
| 9/04 | 4:34 PM | 1.00 |
| 9/09 | 3:08 PM | 2.00 |
| 9/09 | 3:10 PM | 2.00 |
| 9/10 | 2:27 PM | 2.00 |
| 9/11 | 12:41 PM | 3.00 |
| 9/11 | 12:43 PM | 1.00 |
| 9/15 | 9:22 AM | 1.00 |
| 9/15 | 11:53 AM | 6.00 |
| 9/15 | 1:50 PM | 6.00 |
| 9/19 | 12:22 PM | 1.00 |
| 9/19 | 12:27 PM | 1.00 |
| 9/19 | 3:45 PM | 1.00 |
| 9/19 | 3:46 PM | 5.00 |
| 9/24 | 8:18 AM | 1.00 |
| 9/24 | 9:39 AM | 10.00 |
| 9/24 | 4:07 PM | 2.00 |
| 10/20 | 11:09 AM | 1.00 |
| 10/20 | 11:19 AM | 1.00 |
| 10/27 | 1:40 PM | 1.00 |
| 10/28 | 11:18 AM | 1.00 |
| 10/28 | 2:41 PM | 2.00 |
| 11/04 | 4:19 PM | 6.00 |
| 11/06 | 10:09 AM | 1.00 |
| 11/06 | 10:10 AM | 2.00 |
| 11/24 | 10:33 AM | 11.00 |
| 11/26 | 11:15 AM | 2.00 |
| 12/01 | 11:26 AM | 7.00 |
| 12/08 | 3:38 PM | 1.00 |
| 12/11 | 3:58 PM | 2.00 |
| 12/18 | 11:13 AM | 1.00 |
| 12/23 | 11:14 AM | 2.00 |
| 12/23 | 3:37 PM | 2.00 |
| 12/27 | 5:37 PM | 3.00 |
| 1/06 | 11:25 AM | 1.00 |
| 1/06 | 11:26 AM | 1.00 |
| 1/06 | 2:44 PM | 1.00 |

9/12    12:52 PM  1.00

John Diwick

| Date | Time | Duration | | |
|------|------|----------|---|---|
| 1/06 | 4:36 PM | 1.00 | 5:03 PM | 4.00 |
| 1/08 | 1:20 PM | 1.00 | | |
| 1/08 | 1:21 PM | 7.00 | | |
| 1/13 | 1:05 PM | 1.00 | | |
| 1/13 | 1:10 PM | 1.00 | | |
| 1/15 | 11:31 AM | 1.00 | | |
| 2/11 | 9:35 AM | 13.00 | | |
| 2/11 | 12:45 PM | 8.00 | | |
| 2/11 | 1:25 PM | 1.00 | | |





DRESS TO IMPRESS

1005 E. SIBLEY

147TH & SIBLEY                        ☆ NA MANSOUR

708·841·8898

☆ YOUSEF MANSOUR        OR ☆ REEM MANSOUR

5463 W. 108TH PLACE          10355 PARKSIDE AVE

OAK LAWN                      OAK LAWN

☆ FADEL M MOHAMMAD

1937 W 59TH

BASEL FOOD SHOP

☆ BASEL MOHAMMAD

8945 W. 100TH PLACE

PALOS HILLS